### Ambrose Blaney *versus* Abel Rice.

Where a boundary line in a deed of conveyance is described as measuring a certain number of feet, " more or less," and there is nothing in the deed itself or in the subject to which it applies, to explain the description, the number of feet mentioned is to be deemed the precise length of the boundary line.

Where a deed of a part of a tract of land described such part as running back from a street 85 feet, more or less, and bounded in the rear on land of the grantor, being a part of the same tract, and the grantor, some time afterwards, but before he had sold any more of the land, prepared and put on record, a plan of the land, in which the part granted was laid down as 88 feet in depth from the street, it was *held,* that the case came within the rule of fixing a monument or abuttal soon after a conveyance, and that the grantee took according to the plan.

Where the owner of land lying between and abutting on two parallel streets granted a part of it, describing it as fronting on one of the streets and running back 85 feet, " more or less," and subsequently granted another part, describing it as fronting on the other street, and running back 80 feet, and bounded on the first part, when according to the measurements there would be a narrow strip between the two parts, but the second deed referred to a plan on which the dividing line was laid down as 80 feet from the street last mentioned, it was *held,* that the second grantee took 80 feet in depth, according to the plan, and no more.

WRIT of entry. The demandant owned a house and land fronting westerly on Charles street, in Boston, and running back easterly towards George street, and the tenant owned a house and land fronting easterly on George street and running back westerly towards Charles street.

Prior to January 23, 1807, the parcels belonging to both parties, together with other adjoining land, were owned by Charles Bulfinch.

On January 23, 1807, Bulfinch conveyed to Silas Whitney, junior, a parcel of land bounded westerly on the great street, (Charles street,) 60 feet, southerly on land of Whitney 85 feet, more or less, easterly on Bulfinch's own land 60 feet, and northerly on Bulfinch's own land 85 feet, more or less. On March 6, 1807, the northerly half of this lot was conveyed by Whitney to the demandant.

On November 12, 1810, Bulfinch conveyed to Benjamin Joy and others, four lots bounded on George street, running back from George street 80 feet and bounded westerly partly on a passage way and partly on land of Whitney and the demandant. These lots were subsequently divided and one of them came, through several mesne conveyances, to the tenant, by a deed dated May 24, 1832.

The deed to Joy and others referred to a plan which Bulfinch, subsequently to his deed to Whitney, had prepared and signed and placed on record in the registry of deeds, on which the lots above mentioned were laid down, giving to the lot previously sold to Whitney about 88 feet in depth and including the demanded premises, and designating the lots on George street, then owned by Bulfinch himself, as 80 feet deep.

On measuring back from Charles street towards George street 85 feet, for the demandant's lot, and back from George street towards Charles street 80 feet for the tenant's lot, there is a strip between them, which is the land in controversy.

The question of title depended entirely upon the construction of the deeds as applied to the lots of the parties and the adjoining land, without any aid from evidence of possession or occupancy.

*Bartlett* and *F. C. Loring*, for the demandant, argued that the rear line of the demandant's lot, which was originally indeterminate, being 85 feet *more or less* from Charles street, was fixed by the subsequent grant to Joy, at 80 feet from George street ; *Makepeace* v. *Bancroft*, 12 Mass. R. 469 ; *Dibble* v. *Rogers*, 13 Wendell, 537 ; and that as the deed to Joy was precise and accurate in its measurements, and as it referred to a plan which also was accurate, Joy could take what the deed and plan gave him and no more ; *Davis* v. *Rainsford*, 17 Mass. R. 211.

*March 14th.*

*H. H. Fuller* and *Washburn*, for the tenant, said that the grant to Whitney being taken from a larger lot of the grantor, without reference to any monuments, the lines " 85 feet *more or less* " must be taken to be precisely 85 feet, and thus the easterly line of Whitney's lot was clearly ascertained ; *Tyler* v. *Hammond*, 11 Pick. 193 ; *Davis* v. *Rainsford*, 17 Mass. R. 207 ; and that as the land granted to Joy, is described as running back from George street 80 feet and bounded on Whitney's land, the monument, that is, the boundary line of Whitney's land, controls the measurement, and gives to Joy more than 80 feet in depth.

SHAW C. J. delivered the opinion of the Court. In con- *March 19th*

struing the deed from Bulfinch to Whitney, bounding the estate on Charles street, and running back 85 feet more or less, these words " more or less," may be considered as having some meaning, so as not to fix the distance absolutely, though these words are often introduced without having practically any effect. The words of description, " 85 feet more or less," if there were nothing in other parts of the deed, or the subject to which it applies, to control or explain them, especially where the grant is of a parcel measured out of the grantor's own larger tract, would be equivalent to 85 feet absolutely. But the words " more or less " may be considered equivalent to a suggestion, that either there is some monument, abuttal or line there, or as an intimation that one is intended to be placed there, to stand as the line intended, in place of the absolute admeasurement. The fact that Bulfinch the grantor, soon after the execution of this deed, made a plan of this and the adjoining lots, and placed it on record for the information of all concerned, making these two lines described as 85 feet more or less, about 88 or 89 feet, is equivalent to the fixing of such line or monument, so far as his own rights and those claiming under him were concerned. It may be presumed to have been done by agreement and in pursuance of the contract of sale ; but without such presumption, it would be conclusive of the intent of the grantor, in regard to the indefinite words used in his deed, and good against him and those claiming under him. This act being done by Bulfinch, before he conveyed any of the other lots, is sufficient to answer the rule of fixing a monument or abuttal soon after the conveyance.

But there is another view of the case which seems quite decisive. The subsequent deed of Bulfinch to the ancestor of the defendant, and that under which alone he can claim, described the lot as bounded on George street, and running back 80 feet, and there bounded on the land of Whitney and Blaney. The same deed referred to the plan then on record, and therefore the bound on the land of Whitney and Blaney, most naturally and obviously means, the land of Whitney and Blaney as designated and marked upon that plan, especially as such construction gave to the grantees the whole depth of 80 feet as mentioned in the deed.

The Court are of opinion, that the demandant has estab-
lished the better title to the narrow strip of land in question,
and is entitled to recover it in this action.